IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> BILLY LEMUS-MENDOZA, <br><br> Defendant. | ORDER <br><br> AND <br><br> MEMORANDUM DECISION <br><br> Case No. 2:04CR751 TC |

The Grand Jury has charged Billy Lemus-Mendoza with possession of 100 kilograms or more of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Mr. Lemus has moved to suppress all evidence obtained from a search of his car on March 6, 2003. Mr. Lemus asserts that his Fourth Amendment rights were violated because the officer did not have reasonable suspicion sufficient to justify the stop of his vehicle. An evidentiary hearing was conducted on March 7, 2005.

For the reasons set forth below, Mr. Lemus' motion to suppress is DENIED.

### Findings of Fact[1]

On March 6, 2003, at approximately 6:00 p.m., Officer Matt Carmen of the West Valley Police department contacted Officer Scott Arnold, who was on patrol at the time, regarding the

---

[1] Unless otherwise noted, all facts are taken from the March 7, 2005 evidentiary hearing.

possible transport of illegal drugs. (Officer Arnold, a five-year police veteran, testified at the evidentiary hearing.)

Officer Carmen told Officer Arnold that he had information indicating that a blue Lincoln Navigator may be transporting narcotics and gave Officer Arnold the license plate number of the car. Officer Carmen also stated that Officer Arnold was "going to need to find a reason to stop the car." (Transcript of March 7, 2005 Evidentiary Hearing ("Tr.") at 23).

Shortly after speaking with Officer Carmen, Officer Arnold saw Mr. Lemus driving the blue Lincoln Navigator. Officer Arnold began following Mr. Lemus. As he followed, he performed a computer search for the car's license plate number. Officer Arnold described the computer search: "If you type a license plate, hit enter, it will pull up the N.C.I.C. information on the computer to show if its stolen or not. Then it also pulls up the Utah state registration that provides you with plate number, owner, their address, insurance information, etcetera." (Tr. at 8). The search revealed that the car was properly registered and that Mr. Lemus was listed as an owner. In the space designated "insurance" the report read "not found." (Tr. at 25-26; Evid Hrg. Ex. 1).

Officer Arnold testified that the "insurance: not found" message indicated that the vehicle "probably did not have insurance," but that he was not one hundred percent certain of that (Tr. at 28-29). Officer Arnold testified that his supervisors told him: "that when an individual purchases insurance, . . . either the person who is purchasing it or the insurance company is required to report that to the motor vehicle department so that it will show up on the registration." (Tr. at 27). Officer Arnold testified that, in his personal experience, "80 to 90 percent of the time, if it says [insurance: not found], there's not going to be insurance." (Tr. at 32).

Officer Arnold also testified that the "insurance: not found" message could be the result of something other than a lack of valid insurance: the vehicle may not have been insured when it was registered, there may have been a lag between the Department of Motor Vehicle's receipt of information and its input into the computer system, or an insurance company could have failed to report that the vehicle was insured. (Tr. at 33).

On the basis of the vehicle's apparent lack of insurance, Officer Arnold stopped Mr. Lemus. Officer Arnold testified:

> I approached the vehicle and asked for [Mr. Lemus'] driver's license, registration and proof of insurance. He immediately asked what I had stopped him for. Initially I was unable to hear what he was saying due to the passing traffic, so I leaned my head closer to the vehicle through the open window so I could hear him. He then again asked me why I had stopped him. I told him that my computer showed that the vehicle had no insurance, and again asked him for his license, registration and insurance, which he retrieved from the center console of the vehicle.

(Tr. at 10). Officer Arnold stated that when he was leaning into the car he smelled the odor of raw marijuana. Officer Arnold testified that over the course of his five years as a police officer he has had training regarding marijuana and that, in his estimation that he has been in contact with marijuana on over one hundred occasions.

After Mr. Lemus handed over his documents, including a valid proof of insurance, Officer Arnold returned to his car to perform a driver's license check. At this point Officer Arnold requested a drug detection dog and Officer Todd Grey arrived shortly thereafter with dog in tow. After completing the computer check of Mr. Lemus' license and after the arrival of Officer Grey, Officer Arnold returned to Mr. Lemus' car and asked him to get out of the car.

Mr. Lemus consented to a frisk for weapons and Officer Arnold then returned all of Mr.

3

Lemus' documentation. Officer Arnold asked Mr. Lemus about the smell of marijuana and Mr. Lemus acknowledged that he could smell it as well, but attributed the odor to someone who had borrowed the car earlier. Officer Arnold asked Mr. Lemus for consent to search the car to which Mr. Lemus responded: "Yeah, I don't have a problem with that." (Tr. at 14-15).

Officer Arnold produced a consent to search form which he read to Mr. Lemus. Mr. Lemus asked whether he would be held responsible for the contents of the vehicle. Officer Arnold responded: "because he was the registered owner and was in control of the vehicle, . . . if anything illegal was found in the vehicle, he would be held liable for it." (Tr. at 16). Officer Arnold testified that Mr. Lemus then said: "that sounds fair enough, okay, go ahead and search it." (Tr. at 16). Mr. Lemus then signed the consent to search form.

While Officer Arnold was discussing the consent to search form with Mr. Lemus, Officer Grey "did an exterior sniff with his canine on the vehicle." (Tr. at 18). The dog indicated the presence of drugs. Officer Arnold searched the vehicle and discovered a large quantity of marijuana.

### Conclusions of Law

Mr. Lemus argues that the initial stop of his vehicle was not supported by sufficient reasonable suspicion and therefore was a violation of his Fourth Amendment rights. The specific question before the court is whether Officer Arnold had sufficient reasonable suspicion that Mr. Lemus' vehicle was not properly insured to justify a stop. Because a traffic stop is analogous to an investigative detention, it is analyzed under the principles of an investigatory detention as established by Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Tibbets, 396 F.3d 1132, 1136 (10th Cir. 2005).

4

Investigative detention does not require probable cause, but "it does demand 'something more than an inchoate and unparticularized suspicion or "hunch."'" United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996) (quoting United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir. 1994)). The general rule applied by the Tenth Circuit is that:

> [A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant, for purposes of Fourth Amendment review, "whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop."

United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (quoting United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993)); see also United States v. Callarman, 273 F.3d 1284, 1286 (10th Cir. 2001). In Utah, failure to properly insure a vehicle is a criminal offense. U.C.A. §§ 41-12a-301 & 302.

"Reasonable suspicion is 'a particularized and objective basis' for suspecting the person stopped of criminal activity." Tibbets, 396 F.3d at 1138 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). This standard does not require that officers always be correct, but that they be reasonable. Id. A stop is proper if the totality of the circumstances is sufficient to form a particularized and objective basis for that stop. United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004) (citing United States v. Arvizu, 534 U.S. 266, 277-78 (2002)).

"Reasonable suspicion may rely on information less reliable than that required to show probable cause and it need not be correct." Id. (citations omitted). Factual error does not render reasonable suspicion improper if it is supported by an objectively reasonable good-faith belief. Id. (citing United States v. Walraven, 892 F.2d 972, 974-75 (10th Cir. 1989)). The actual

5

motivation and subjective belief of the officer are irrelevant. United States v. DeGasso, 369 F.3d 1139, 1143 (10th Cir. 2004).

In the present case, Officer Arnold testified that he ran a license plate check of Mr. Lemus' vehicle from his patrol car. This check revealed the message "insured: not found." Mr. Lemus has pointed out that there are various reasons that this message could have appeared and that these reasons were within the scope of Officer Arnold's knowledge. Officer Arnold testified, however, that based on his training and experience, this message indicated that this particular vehicle was being operated in violation of Utah law. Specifically, he testified that eighty to ninety percent of the time when this message appears, in his personal experience, the vehicle is not properly insured.

These facts establish that Officer Arnold did have an objective and reasonable articulable suspicion that a traffic or equipment violation was occurring. See Botero-Ospina, 71 F.3d 783 (officer's stop valid where after seeing the vehicle swerve officer stopped defendant to assure that driver was not falling asleep or driving under the influence); United States v. Bustillos-Munoz, 235 F.3d 505 (10th Cir. 2000) (stop valid because driver appeared to have high beams on, even though officer later proved wrong); DeGasso, 369 F.3d 1139 (officer had probable cause to stop vehicle with Mexican license plate that was partly obscured by bumper); United States v. Callarman, 273 F.3d 1284 (10th Cir. 2001) (cracked windshield provided sufficient reasonable suspicion for stop).

The fact that Officer Arnold was seeking a reason to stop Mr. Lemus and the fact that the vehicle was properly insured do not render this stop improper. As noted above, factual error and the subjective intent of the officer are irrelevant when the stop is otherwise based on an

objectively reasonable good-faith belief.

**ORDER**

For the reasons set forth above, the court DENIES Mr. Lemus' motion to suppress.

DATED this __5__ day of May, 2005.

BY THE COURT:

*[signature]*

TENA CAMPBELL
United States District Judge